PAUL J. FISHMAN
United States Attorney
By: Sarah Devlin
    Kathleen O'Leary
Assistant United States Attorneys
970 Broad Street, Suite 700
Newark, New Jersey 07102
Tel: 973.645.2740
Fax: 973.297.2042
sarah.devlin@usdoj.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Hon. |
| Plaintiff | : | Civil Action No. |
| v. | : | VERIFIED COMPLAINT FOR FORFEITURE *IN REM* |
| ONE FULL MOUNT TAXIDERMIED FEMALE TIGER (*PANTHERA TIGRIS*), | : : | |
| Defendant *in rem*. | : | |

Plaintiff, the United States of America (the "Government"), by its attorney Paul J. Fishman, United States Attorney for the District of New Jersey, for its verified complaint (the "Complaint") alleges, upon information and belief, as follows:

## I.   NATURE OF THE ACTION

1.   This action is brought by the United States of America seeking forfeiture of one mounted taxidermied female tiger (*panthera tigris*) (hereinafter, the "Defendant in rem").

2.   The Defendant in rem is subject to seizure and forfeiture to the United States pursuant to 16 U.S.C. § 1540(e)(4)(A), as wildlife possessed, sold, purchased, offered for sale or purchase, transported, delivered, received,

carried, shipped, or exported in violation of the Endangered Species Act and the regulations promulgated thereunder.

3.      The Defendant in rem is further subject to forfeiture to the United States pursuant to 19 U.S.C. § 1595a(c)(2)(B) because its importation or entry requires a license, permit or other authorization of an agency of the United States Government and the Defendant in rem was not accompanied by such license, permit, or authorization, to wit, a valid CITES Import Permit, in accordance with 50 C.F.R. § 23.20(e).

## II.     JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

5.      Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because the acts and omissions giving rise to the forfeiture took place in the District of New Jersey.

6.      The Defendant in rem is currently in the custody of the United States Department of the Interior, Fish and Wildlife Service, in its Division of Law Enforcement facility in Elizabeth, New Jersey.

## III.   LEGAL BACKGROUND

### A.   The Convention on International Trade in Endangered Species ("CITES")

7.     The United States has been a party to the Convention on International Trade in Endangered Species of Wild Fauna and Flora, Mar. 3, 1973, 27 U.S.T. 1087, T.I.A.S. No. 8249 (entered into force July 1, 1975) ("CITES"), since March 3, 1973.

8.     The purpose of CITES is to protect species that are, or may become, threatened with extinction by international trade.  CITES established a system of import and export restrictions to protect these species from overexploitation through international trade.  Different levels of trade regulation are provided depending on the status of the listed species and the contribution trade makes to the decline of the species.  CITES lists the affected species on Appendices I, II, and III to the treaty, with each appendix specifying trade controls corresponding to the threat level facing the species listed therein.

9.     Article I(a) of CITES defines "species" as "any species, subspecies, or geographically separate population thereof."  Article I(b) defines "specimen" as "(i) any animal or plant, whether alive or dead; (ii) in the case of an animal: for species included in Appendices I and II, any readily recognizable part or derivative thereof . . . ."

10.     CITES operates by creating a system of permits to closely regulate the trade in listed species.  Each country that is a party to CITES must report

-3-

all of the permits to the CITES Secretariat in Geneva, Switzerland every year for use in reviewing whether a species requires additional conservation measures.

11.    CITES requires each signatory country to prohibit shipments that violate CITES and to take measures to enforce CITES.  Additionally, CITES requires each country to implement measures that penalize CITES violations, and that provide for the confiscation of specimens imported in violation of CITES.  Signatory countries may adopt domestic laws that are stricter than what CITES requires, but must at a minimum enact laws that ensure compliance with CITES.

12.    Violations of the CITES permit regulations undermine worldwide conservation efforts as well as the treaty obligations of the United States.

13.    Appendix I to CITES represents the most highly protected category. It includes those species that are threatened with extinction or whose survival is or may be affected by trade.  The importation or exportation of an Appendix I species for any purpose — including non-commercial shipment — is authorized only in exceptional circumstances.

14.    In order to trade in any species listed in Appendix I, the exporter must first obtain both a valid CITES Appendix I Export Permit from the exporting country and a valid CITES Appendix I Import Permit from the country of import.  *See* CITES art. III, §§ 2, 3; 50 C.F.R. § 23.20(e).

15.    A CITES Appendix I Export Permit can be obtained only if the CITES Scientific Authority of the exporting country has made a determination

-4-

that trade in this specimen will not be detrimental to the survival of the species and that the specimen was legally acquired under the domestic laws of that country.

16.    A CITES Appendix I Import Permit can only be obtained if the CITES Scientific Authority of the importing country has made a determination that the trade in this specimen will not be detrimental to the survival of the species and that the imported specimen will not be used for commercial purposes.

17.    As further set forth below, all species of tigers (*panthera tigris*) are listed on Appendix I and have been listed in CITES since October 22, 1987.

**B.    The Endangered Species Act**

18.    In the United States, CITES is enforced through the Endangered Species Act of 1973 (the "ESA"), 16 U.S.C. § 1531 *et seq.*, and its accompanying regulations, 50 C.F.R. Part 23.

19.    The Endangered Species Act defines "fish or wildlife" as "any member of the animal kingdom . . . and includes any part, product, egg, or offspring thereof, or the dead body or parts thereof." 16 U.S.C. § 1532(8).

20.    The ESA specifically prohibits the import, export or possession of any specimen contrary to the provisions of CITES, 16 U.S.C. § 1538(c)(l).

21.    The ESA regulations provide detailed instructions regarding the need for proper CITES permits. *See* 50 C.F.R. Part 23. These regulations include a requirement that each importation of an Appendix I specimen be

accompanied by a valid foreign CITES Export Permit and a valid CITES Import Permit.  *See* 50 C.F.R. § 23.20(e).

22.     Title 16, United States Code, Section 1538(a)(1)(E) provides that it is unlawful for anyone to deliver, receive, carry, transport, or ship in interstate or foreign commerce, by any means whatsoever and in the course of commercial activity, any endangered species.

23.     The ESA authorizes the United States Fish and Wildlife Service ("USFWS") of the Department of the Interior to seize any specimen that is illegally imported or exported.  *See* 16 U.S.C. § 1538(a)(1)(A).  Any such specimen imported, exported, or possessed in violation of the regulations is subject to forfeiture.  16 U.S.C. § 1540(e)(4)(A).

24.     A CITES Import Permit is required before an Appendix I specimen is imported into the United States, even if the specimen is part of one's household effects.  *See* 50 C.F.R. § 23.15(e)(1).

### III.     FACTUAL ALLEGATIONS

#### A.     Tigers

25.     Tigers (*panthera tigris*) are carnivorous mammals of prehistoric origin characterized by their coat of reddish-orange fur, which is marked by dark stripes.

26.     Tigers are members of the animal kingdom and are the largest wild cat in the world.

27.     All species of tigers are protected under U.S. and international law and have been listed on Appendix I of the CITES listings since October 22,

1987. *See* 50 C.F.R. §§ 17.11, 17.21; *see also*

http://www.cites.org/eng/app/appendices.php.

28.    Tigers are designated as an endangered species under U.S. law. *See* 50 C.F.R. § 17.11.

29.    Trophy hunting (until it was banned), and a market for tiger rugs and coats threatened tigers' survival.

30.    Today, habitat destruction, human population growth, and a demand for tiger parts threaten the survival of all species of tigers.

31.    In some cultures, tiger parts are thought to cure diseases such as rheumatism, convulsions, typhoid fever, and dysentery.  Tiger bones used in traditional medicines intended to cure such diseases sell for as much as $75 to $115 per pound.

**B.    The Defendant in rem**

32.    On or about May 18, 2011, the Belgian Federal Public Service for Health, Food Chain Safety and the Environment (a.k.a. the Service Public Federal (SPF) Santé publique, Sécurité de la Chaîne alimentaire et Environnement) issued a European Union ("E.U.") CITES certificate for the Defendant in rem (the "E.U. CITES certificate").

33.    The E.U. CITES certificate permitted the Defendant in rem to be transported within the E.U., but not outside the E.U.  The E.U. CITES certificate issued to the Defendant in rem specifically states, "Not for use outside the European Community."

34.    The E.U. CITES certificate indicates that the Defendant in rem was a captive-bred female tiger, born on September 26, 2000.

35.    The E.U. CITES certificate lists France as the Defendant in rem's country of origin.

36.    The E.U. CITES certificate was issued to S.A Gerard Simon, which is listed on the E.U. CITES certificate as the holder of the E.U. CITES Certificate for the Defendant in rem.

37.    S.A. Gerard Simon is a taxidermy business located at Rue W. Churchill 26, 4624 Romsèe, Belgium.  The internet website for S.A. Gerard Simon shows several taxidermied animals, including tigers.

38.    The current owner of the Defendant in rem (the "Owner") obtained possession of the E.U. CITES certificate issued for the Defendant in rem.  The E.U. CITES certificate issued for the Defendant in rem does not list the Owner of the Defendant in rem as the holder of the E.U. CITES certificate.  Rather, as stated above, S.A. Gerard Simon is listed as the holder of the E.U. CITES certificate.

C.    **Transportation of the Defendant in rem**

39.    As set forth above, import and export permits for wildlife listed in Appendix I to CITES (including tigers) can be obtained only if the CITES Scientific Authority of the importing country has made a determination that trade in this specimen will not be detrimental to the survival of the species and that the imported specimen will not be used for commercial purposes.  In the United States, the agency authorized to issue certificates authorizing import of

listed wildlife is the United States Fish and Wildlife Service's Division of Management Authority.

40.     On or about November 24, 2014, as part of a household move, the Owner exported the Defendant in rem from France to the United States, along with the Owner's other household items.

41.     The cargo shipment containing the Defendant in rem was shipped to the United States from the Port of Le Havre, in France.[1]

42.     The waybill for the shipment containing the Defendant in rem lists the Owner of the Defendant in rem as the consignee of the shipment.

43.     On or about December 3, 2014, the Defendant in rem arrived in the United States at the Port of Newark, which is located in Newark, New Jersey, within the District of New Jersey.

### D.     **USFWS Form 3-177**

44.     A USFWS Form 3-177, Declaration for Importation or Exportation of Fish or Wildlife, is required for international shipments of wildlife to or from the United States.

45.     On or about December 1, 2014, a representative of the customs broker being used by the Owner in connection with his household move from France to the United States ("the customs broker") submitted to the USFWS a completed Form 3-177 listing the Defendant in rem.

46.     The Form 3-177 listing the Defendant in rem was sent to the USFWS by the customs broker as part of a complete entry package of

---

[1] France is a party to CITES.  A valid CITES Export permit from France for the Defendant in rem was not provided when the Defendant in rem entered the United States.

documents. The documents submitted by the customs broker to the USFWS consisted of: (i) the Form 3-177, (ii) the E.U. CITES certificate listing the Defendant in rem, (iii) a copy of the Owner's United States Visa, (iv) a copy of the Owner's French passport, (v) a copy of the shipping bill for the shipment with which the Defendant in rem was sent to the United States, and (vi) a copy of the waybill for the shipment with which the Defendant in rem was sent to the United States.

47.    The Form 3-177 submitted to the USFWS listing the Defendant in rem provided, *inter alia,* the following information: the Defendant in rem's scientific name (panthera tigris) and common name (tiger), the foreign CITES permit number for the Defendant in rem (FR-04-072-000821-K$^2$), the quantity and units of the Defendant in rem (1.00), the total monetary value of the Defendant in rem ($28,637), and the country of species origin code ("FR").

48.    The Form 3-177 listing the Defendant in rem did not list a U.S. CITES permit number, even though the Form 3-177 prompts the filer of the form to provide the United States CITES permit number. No other fields were left blank on the Form 3-177 listing the Defendant in rem.

49.    The Form 3-177 listing the Defendant in rem names the United States importer of the Defendant in rem as the Owner, whose address is listed as being in New York, New York. The Form 3-177 listing the Defendant in rem names the foreign exporter of the Defendant in rem as SA Gerard Simon, whose address is listed as being in Belgium.

---

[2] This foreign CITES permit number, which was listed on the Form 3-177, corresponds to the permit number listed on the E.U. CITES certificate for the Defendant in rem.

50.   Although the Form 3-177 listing the Defendant in rem makes it appear as if the Defendant in rem was shipped from SA Gerard Simon in Belgium[3] to the Owner in New York, the Defendant in rem was actually shipped to the United States from France, along with the Owner's household goods.

51.   USFWS wildlife inspectors routinely review Form 3-177's submitted to the USFWS by importers and exporters.

52.   On or about December 9, 2014, USFWS Wildlife Inspector Michael Fusco ("Inspector Fusco") reviewed both the Form 3-177 listing the Defendant in rem, which had been submitted to the USFWS on or about December 1, 2014, and the E.U. CITES certificate for the Defendant in rem. After reviewing the Form 3-177 listing the Defendant in rem, along with the E.U. CITES certificate, Inspector Fusco contacted a representative of the customs broker to request access to the Defendant in rem for physical inspection.

53.   The representative of the customs broker thereafter arranged for the shipping container containing the Defendant in rem to be moved to a location where the USFWS inspection of the Defendant in rem could occur.

**E.   The Administrative Detention and Forfeiture Proceedings**

54.   On or about December 15, 2014, Inspector Fusco conducted a physical inspection of the Defendant in rem at the East Coast Warehouse, a bonded warehouse that is a designated United States Customs Examination Station ("CES") located at the Port of Newark.

---

[3] Belgium is a party to CITES. A valid CITES export permit from Belgium was not provided when the Defendant in rem entered the United States.

-11-

55. Inspector Fusco's physical inspection of the Defendant in rem verified that the shipment containing the Defendant in rem did in fact hold one full mounted taxidermied tiger.

56. The Defendant in rem was held in a secure area at the CES following Inspector Fusco's inspection of the Defendant in rem.

57. On or about December 29, 2014, Inspector Fusco signed a property receipt for the Defendant in rem at the CES Warehouse, and seized the Defendant in rem.

58. On or about December 29, 2014, the Defendant in rem was transported from the CES to the USFWS's Division of Law Enforcement facility located in Elizabeth, New Jersey, where the Defendant in rem was placed in a secured evidence room.

59. On or about December 29, 2014, Inspector Fusco called a representative of the customs broker to notify him of the seizure of the Defendant in rem. During the phone call, Inspector Fusco also explained the ESA and the administrative forfeiture process to the customs broker.

60. On or about January 2, 2015, the shipment of the Defendant in rem was formally refused by USFWS, and notice of the refusal was electronically transmitted to a representative of the customs broker on the same date.

61. On or about January 9, 2015, the USFWS sent a Notice of Seizure and Proposed Forfeiture to the Owner notifying him of USFWS's seizure of the Defendant in rem. The Notice also explained the administrative forfeiture

-12-

process and identified options available to contest the proposed administrative forfeiture.

62. On or about April 1, 2015, the Owner filed a claim in the USFWS administrative forfeiture proceedings, stating that he is the owner of the Defendant in rem and requesting that the Government file a judicial forfeiture action.

63. The Owner's claim was sent to the USFWS by the Owner's attorney, along with, *inter alia*: a sales receipt for the Owner's purchase of the Defendant in rem, and a certificate of authenticity for the Defendant in rem.

64. The sales receipt for the Defendant in rem indicates that the current owner purchased the Defendant in rem on or about May 21, 2012 from Daniel Firman in France for 23,000 Euros. The sales receipt lists the E.U. CITES certificate number for the Defendant in rem.

65. The certificate of authenticity for the Defendant in rem includes a signed certification from Daniel Firman, certifying the May 2012 sale of the Defendant in rem, along with a photograph of the Defendant in rem.

66. Based on review of the E.U. CITES certificate for the Defendant in rem, the certificate of authenticity for the Defendant in rem, the sales receipt for the Defendant in rem, and physical inspection of the Defendant in rem, the USFWS determined that the Defendant in rem is in fact a tiger.

67. The USFWS was never provided with a valid United States CITES import permit for the Defendant in rem.

## IV. FIRST CLAIM FOR FORFEITURE

-13-

The statutory provisions pursuant to which the Defendant in rem is subject to seizure and forfeiture are set forth below.

**A.    The Endangered Species Act**

68.    With respect to endangered species, the ESA makes it unlawful for any person subject to the jurisdiction of the United States to:

> (A)    import any such species into, or export any such species from the United States;
>
> (B)    take any such species within the United States or the territorial sea of the United States;
>
> (C)    take any such species upon the high seas;
>
> (D)    possess, sell, deliver, carry, transport, or ship, by any means whatsoever, any such species taken in violation of subparagraphs (B) and (C);
>
> (E)    deliver, receive, carry, transport, or ship in interstate or foreign commerce, by any means whatsoever and in the course of a commercial activity, any such species;
>
> (F)    sell or offer for sale in interstate or foreign commerce any such species; or
>
> (G)    violate any regulation pertaining to such species or to any threatened species of fish or wildlife listed pursuant to section 1533 of this title and promulgated by the Secretary pursuant to authority provided by this chapter.

16 U.S.C. §§ 1538(a)(1), 1538(b) (criminal penalties for knowing violations).

69.    Title 16, United States Code, Section 1540 provides in pertinent part that:

> All fish or wildlife or plants taken, possessed, sold, purchased, offered for sale or purchase, transported, delivered, received, carried, shipped, exported, or imported contrary to the provisions of this chapter, any regulation made pursuant thereto,

or any permit or certificate issued hereunder shall
be subject to forfeiture to the United States.

16 U.S.C. § 1540(e)(4)(A).

70.     Tigers are designated as an endangered species under U.S. law.
*See* 50 C.F.R. §§ 17.11.

71.     Thus, the Defendant in rem is subject to forfeiture pursuant to 16
U.S.C. § 1540(e)(4) as an animal imported into the United States contrary to
law, in that the Defendant in rem is an endangered species that was
transported, delivered, received, shipped, or imported, in violation of the
Endangered Species Act, 16 U.S.C. § 1538(a)(1), and federal regulations
pertaining to endangered species of wildlife, 50 C.F.R. Parts 17 and 23.

**B.      Importation Contrary to Law**

72.     Title 19, United States Code, Section 1595a(c)(2)(B) subjects to
seizure and forfeiture "[m]erchandise which is introduced or attempted to be
introduced into the United States contrary to law" if "its importation or entry
requires a license, permit or other authorization of an agency of the United
States Government and the merchandise is not accompanied by such license,
permit, or authorization."

73.     Thus, the Defendant in rem is subject to forfeiture to the United
States pursuant to 19 U.S.C. § 1595a(c)(2)(B) because its importation or entry
requires a license, permit or other authorization of an agency of the United
States Government and the Defendant in rem was not accompanied by such
license, permit, or authorization, to wit, a valid CITES Import Permit, in
accordance with 50 C.F.R. § 23.20(e).

## REQUEST FOR RELIEF

WHEREFORE plaintiff, the United States of America requests that judgment be entered in its favor and against the Defendant in rem, and that process issue to enforce the forfeiture of the Defendant in rem, and that all persons having an interest in the Defendant in rem be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendant in rem to the United States of America for disposition according to law, and that this Court grant the Government such further relief as this Court may deem just and proper, together with the costs and disbursements in this action.

Dated:   Newark, New Jersey
         June 30, 2015

PAUL J. FISHMAN
UNITED STATES ATTORNEY

By: _____
         Sarah Devlin
         Kathleen O'Leary
         Assistant United States Attorneys

<u>VERIFICATION</u>

STATE OF NEW JERSEY            :
                                                   : ss.
COUNTY OF ESSEX               :

I, Michael Inspector Fusco, hereby verify and declare under penalty of perjury that I am a Wildlife Inspector with the United States Fish and Wildlife Service and that I have read the foregoing Verified Complaint for Forfeiture *in rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my information and the grounds of my belief include the official files and records of the United States, information supplied to me by other law enforcement officers, and my own investigation of this case.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

_____
Michael Fusco
Wildlife Inspector
United States Fish and Wildlife Service
Office of Law Enforcement

Sworn to and subscribed before me this
day 30th of June 2015, at Newark, New Jersey.

_____
Solomon Chouicha
Attorney-at-Law of the State of New Jersey